# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **BRENT BOWERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:09-cv-0878** |
| | § | |
| **PIPE FITTERS LOCAL UNION ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Brent Bowers' Motion for Summary Judgment (Doc. No. 28), and Defendants' Motion for Summary Judgment (Doc. No. 31). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Plaintiff's motion should be denied, and Defendants' motion should be granted.

## I.     BACKGROUND

Plaintiff's causes of action arise out of a trusteeship imposed on Local Union No. 211 ("Local 211"), an affiliate of Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO ("UA").[1]  Plaintiff Brent Bowers ("Bowers") is a former Business Agent for Local 211.  He was elected as a Business Agent for Local 211 in 2006, his fourth consecutive term.  (*See* Order at 2, *Bowers v. United Association of Journeymen and*

---

[1] This Court must view all evidence in the light most favorable to the non-moving party in a motion for summary judgment.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The relevant background facts of this case appear to be undisputed.

*Apprentices of Plumbing and Pipe Fitting Industry*, No. 8-cv-1208 (S.D. Tex. May 22, 2009)) ("2009 Order").[2]

The UA Constitution governs the relations between the UA, its local unions, and individual members.  (Defs.' Mot. for Summ. J. & Their Opp. to Pl.'s Mot. for Summ. J., Doc. No. 31, at 4.)   The UA Constitution allows the UA to place a local union in trusteeship under certain circumstances, as follows:

> If the General President has or receives information which leads him to believe that any of the officers of a Local Union or other affiliated body are dishonest or incompetent, or that such organizations are not being conducted in accordance with the Constitution and laws of the United Association for the benefit of its members, or are being conducted in such a manner as to jeopardize the interests of the United Association or its affiliated bodies, (or if the General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out legitimate objectives of such affiliated body), the General President may, after filing of charges or causing charges to be filed, appoint a trustee to take charge of and control the affairs of such Local Union or other affiliated body including, but not limited to, removal of any or all officers, appointment of temporary officers and control of all funds and property of the Local Union or other affiliated body.  Before the appointment of such trustee, the General President shall set a time and place for the hearing of charges before a hearing officer appointed for the purpose of determining whether such trustee shall be appointed . . . .

(Doc. No. 31, Ex. 2.A, at 60.)  Pursuant to this provision of UA's Constitution, UA filed charges against Local 211 and set a hearing to determine whether Local 211 should be placed into trusteeship.  (2009 Order, at 2.)    UA's General President, William Hite ("Hite"), appointed Edward Keenan ("Keenan"), a Business Manager of another UA affiliated local, to preside over the hearing.  (*Id.*)  Local 211 officers and members were given notice of the charges and hearing, and were given the opportunity to make

---

[2] This suit arises from the same background facts as another case decided by this Court in 2009.  In that case, Bowers brought suit against seventeen Defendants for defamation and tortious interference with his employment contract.  The Court borrows from the facts laid out in that case.

statements at the hearing.  (*Id.* at 2-3.)  The hearing was held on March 14-15, 2007, in Houston, Texas.  UA Director of Organization, Kirk W. Smith, presented his case in support of placing Local 211 into trusteeship.  Eight Local 211 officers, including Bowers, spoke at the hearing and submitted evidence.

After the hearing, Keenan drafted a report and recommendation regarding the trusteeship charges.  (Doc. No. 31, Ex. 1.A.)  Keenan reviewed the evidence and witness testimony thoroughly.  Based on the record, Keenan found that Local 211's membership had declined at an alarming rate, from 4,712 active members in 1987 to 1,713 active members in 2006.  (*Id.* at 13.)  Keenan compared this low membership with the 100,000 plumbing and pipefitting jobs in the Houston area, and noted that Local 211's market share in the industrial field was less than 1%.  (*Id.*)  Keenan further found that Local 211 had failed to provide a reliable source of manpower, and received a poor reputation among contractors as a result.  Finally, Keenan found that "active opposition to organizing and recruiting by some of the officers and membership," in addition to infighting, had led to a "violation of constitutional responsibility" on the part of Local 211 officers.  (*Id.* at 14, 16.)  Ultimately, Keenan found that the charges had been proven, and recommended that Local 211 be placed into trusteeship.  (*Id.* at 16.)  President Hite adopted Keenan's report and recommendation on May 21, 2007, and placed Local 211 into trusteeship.  Hite appointed International Representative Phillip Lord ("Lord"), also a Defendant here, as trustee.  (Doc. No. 31, Ex. 1.A.)  Following his appointment, Lord terminated Plaintiff's position.  (2009 Order, at 3.)

Four appeals were filed pursuant to the UA Constitution's procedures.  All appeals were denied by the UA General Executive Board.  (*Id.*)  Bowers then filed a

complaint with the U.S. Department of Labor ("DOL") pursuant to Section 304(a) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 464(a), claiming that the trusteeship had been unlawfully imposed. (*Id.*)  The DOL conducted an investigation and ultimately dismissed the complaint on February 29, 2008, finding that the procedures of the UA Constitution were followed, that a fair hearing was held, and that the trusteeship was imposed for proper reasons. (*Id.*)

Under the LMRDA, a trusteeship's presumption of validity expires after an eighteen-month period.  On November 23, 2008, when Local 211 had been in trusteeship for longer than eighteen months, Bowers filed another complaint with the DOL challenging the continuation of the trusteeship.  (Pl. Brent Bowers Mot. for Summ. J., Doc. No. 28, at Ex. A.)  Following an investigation, the DOL determined that UA had not shown by clear and convincing evidence that the continuation of the trusteeship beyond an eighteen-month period was necessary for a purpose under Section 302 of the LRMDA. The UA believed that continuation of the trusteeship was lawful.  (Doc. No. 31, Ex. 5.A.) After several written communications between the DOL and UA, the parties reached a settlement regarding termination of the trusteeship.  (*Id.* Ex. 5, ¶ 4.)  The UA agreed to conduct elections for Local 211 officers, and terminate the trusteeship, by August 31, 2009.  (*Id.* Ex. 5.A.)  The DOL accepted the agreement on April 1, 2009, and in consideration pledged not to "institute nor support any proceeding seeking a judicial determination" that the continuation of the trusteeship was invalid.  (*Id.* Ex. 5.B.)

Just before the agreement was reached, Bowers instituted this action.  He filed a motion for a temporary restraining order shortly thereafter, seeking to halt Local 211's elections.  This Court entered a Memorandum & Order (Doc. No. 17) denying Bower's

motion.  Elections were conducted pursuant to a new set of bylaws implemented by Lord, and results were announced on June 16, 2009.  (Doc. No. 31, Ex. 3, ¶ 7.)  No election protest was filed by the provided deadline.  On July 7, 2009, the new elected officers were installed and the trusteeship was terminated.  (*Id.* Ex. 3, ¶ 9.)

After his motion for temporary restraining order was denied, Bowers filed a First Amended Petition (Doc. No. 26), which is the live pleading in this case.  Construing Bowers' complaint and subsequent filings liberally, as this Court must do, he alleges violations of Titles I, III, and IV of the LMRDA.  The Court will take up each of these issues in turn.

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Id.*  The Court may not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The court should give credence to the evidence

favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Id.* at 151.  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

### III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A.  Title I Violations

The LMRDA "protects the equal rights of union members to participate in internal union affairs."  *Robles v. Int'l Longshoremen Ass'n AFL-CIO (ILA)*, 491 F. Supp. 2d 205, 208 (D.P.R. 2006).  Title I includes a Bill of Rights for union members which "protects them against the discriminatory application of union rules."  *Id.*  Bowers asserts that Defendants violated his rights under Section 101(a)(1) of the LMRDA, which provides:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1).  In March 2009, Lord unilaterally changed the Local 211 bylaws without a vote of the membership.  Among other changes, the new bylaws provided for appointed, not elected, Business Agents, and combined the office of Business Manager and Financial Secretary-Treasurer.  The new bylaws also provided for appointed, rather

than elected, election committee members, and restricted the procedure by which members may propose amendments to the bylaws. (*See* Doc. No. 31, Ex. 2, ¶ 18; *Id.* Ex. 3, ¶ 12; Doc. No. 28, at 9-10.) Lord announced the adoption of the new bylaws at a special meeting held in March 2009, and posted them on Local 211's website shortly thereafter. Bowers asserts that the new bylaws violate Section 101(a)(1) of the LMRDA by denying him the right to elect or run for the Business Agent, Financial Secretary Treasurer, and Election Committee positions, and because they were unilaterally revised without a vote from the membership, which the old bylaws required. (Doc. No. 28, at 9-10; Pl.'s Opp. to Defs.' Mot. for Summ. J., Doc. No. 32, ¶ 8.)

## 1. Did the adoption of the bylaws without a vote violate Bowers' Title I rights?

Defendants argue that Plaintiff has not established a claim under Section 101(a)(1) of the LMRDA because that provision protects only a member's equal right to vote vis-à-vis other union members. In other words, the LMRDA forbids only unequal treatment among the membership with respect to voting, nomination, and other participation in union affairs. Because *all* Local 211 members, and not just Bowers, were denied an opportunity to vote on the revised bylaws, Defendants contend they were treated equally with respect to one another. Thus, a Section 101(a)(1) claim may not lie.

The Court agrees. Section 101(a)(1) of the LMRDA is "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey*, 379 U.S. 134, 139 (1964). In *Calhoon*, three members of a local marine engineers' union affiliate brought suit under Section 101(a)(1), claiming that the local bylaws and national constitution violated their rights because they only allowed members to nominate themselves for office, and imposed a

requirement that all members had to serve in the union and at sea for a minimum amount of time before being eligible for office. *Id.* 135-36. The union members claimed that the eligibility requirements "infringed 'the right of members . . . to nominate candidates," secured to them by Section 101(a)(1). *Id.* at 135. The Supreme Court disagreed, finding that the union members had not been discriminated against nor "denied [a] privilege or right to vote or nominate which the union [had] granted to others." *Id.* at 139. In other words, because all union members were similarly treated with respect to the restrictive eligibility requirements, the union's action did not run afoul of Section 101(a)(1).

The Fifth Circuit has also spoken on the issue. In *Alexander v. International Union of Operating Engineers, AFL-CIO*, individual union members sued the local and international union after the local's business agent, at the direction of the international union's president, signed a project agreement that had twice been unanimously rejected by vote of the local membership. 624 F.2d 1235, 1236 (5th Cir. 1980). Local members claimed that their equal rights to vote under Section 101(a)(1) were denied when the business agent entered into the agreement, thereby disregarding the local union's two separate votes on the matter. Citing *Calhoon*, the Fifth Circuit found that the "guarantee of 'equal rights' in [S]ection 101(a)(1) forbids only unequal treatment as between members of a union." *Id.* at 1240. The court stated that the relevant question under Section 101(a)(1) was "not whether the members were treated properly or fairly, but whether they were treated equally." *Id.* (citations omitted). Thus, because Plaintiffs had not been singled out for disparate treatment, and there was no allegation that other union

8

members received better treatment in exercising their rights to vote, the court found that the Plaintiffs had not stated a cause of action under Section 101(a)(1).[3]

In this case, it is undisputed that no member of the union was allowed to vote on the revised bylaws.  Similarly, Bowers has put forth no evidence to show that members of other local unions under trusteeship are treated any differently with respect to the implementation of new bylaws.  The Court finds that any denial of Bowers' right to vote did not discriminate against any person or group, but instead "affected each member equally."  *Id.*  Under the relevant precedent, the union did not violate Section 101(a)(1).

Moreover, the "right against discrimination [contained in Section 101(a)(1)] is 'subject to rules and regulations' by the union."  *Calhoon*, 379 U.S. at 139.  The UA submitted unrebutted evidence that when it imposes a trusteeship under Section 92 of the UA Constitution, the local union's autonomy is "completely suspended and the trustee has full authority to conduct the local union's affairs without regard to any provisions of the local union's bylaws."  (Doc. No. 31, Ex. 1, ¶ 14.)  Under the UA's interpretation of Section 92, a trustee retains the authority to terminate officers, suspend bylaws, suspend membership meetings, conduct local union business without the vote of participation of the local union membership, and revise bylaws without a vote of the membership.  (*Id.* ¶ 14-15.)

A union's interpretation of its own constitution will be struck down only if it is "'patently unreasonable.'"  *Newell v. Int'l Bhd. Of Elec. Workers*, 789 F.2d 1186, 1189

---

[3] One year after its decision in *Alexander*, the Fifth Circuit reached the opposite conclusion and held that conduct that evenly denied everyone the right to vote violated Section 101(a)(1).  *Christopher v. Safeway Stores, Inc.*, 644 F.2d 467 (5th Cir. 1981).  Several courts have declined to adopt *Christopher*'s reasoning. *See, e.g., Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1473 n.7 (9th Cir. 1992).  This Court believes that *Christopher* conflicts with Supreme Court precedent in *Calhoon*.  *Alexander* more closely follows the Supreme Court's directive that discrimination must be shown in a Section 101(a)(1) suit, *see* 379 U.S. at 139, and the Court follows *Alexander* here.

(5th Cir. 1986) (quoting *Stelling v. IBEW*, 587 F.2d 1379, 1389 (9th Cir. 1978), *cert. denied*, 442 U.S. 944 (1979)).  The Court, mindful of the "general congressional policy" that affords unions "great latitude" in handling internal affairs, cannot say that the UA's interpretation allowing a trustee to revise bylaws is patently unreasonable.  *Calhoon*, 379 U.S. at 140.  Section 101(a)(1)'s mandate against discrimination was subject to the UA's rule that allowed Lord to exercise his power to revise bylaws.  No violation of Section 101(a)(1) occurred.[4]

### 2.  Do the new bylaws themselves violate Bowers' Title I rights?

In his motion for summary judgment, Bowers avers that the bylaws themselves violate the law by denying him the right to elect or run for the positions Lord removed from elective office, or combined with other offices.  (Doc. No. 28, at 9-10; Pl.'s Opp. to Defs.' Mot. for Summ. J., Doc. No. 32, ¶ 8.)

The Court disagrees.  There is nothing in Title I that requires a local union to maintain certain elective offices.  Lord provides undisputed testimony that local union structure varies considerably.  For example, the Business Agent positions include both elective and appointed, and in some local unions, they do not exist at all.  (Doc. No. 31, ¶ 15.)  Similarly, many local unions combine the office of Business Manager/Financial Secretary-Treasurer.  (*Id.* ¶ 18.)  Unions are free to structure their elected offices as they like, subject to regulations in Title IV not relevant here.  Title I simply mandates that, where elected offices exist, each member be afforded an equal opportunity to nominate, vote, and run for the positions.  The Court may not imply a voting right where it is not

---

[4] Bowers makes much of the fact that he was told by a DOL employee that his rights had been violated under the LMRDA.  (Doc. No. 28, at 6-7.)  The Court does not find this determination to be dispositive.  It is this Court's domain to decide whether Plaintiff's Title I rights have been violated.  29 U.S.C. § 412.

"clearly provided," as doing so would "impermissibly interfere with the union's organizational structure." *O'Neill v. Air Line Pilots Ass'n, Int'l*, 886 F.2d 1438, 1448 (5th Cir. 1989) (citing *Calhoon*, 379 U.S. at 140), *rev'd on other grounds*, 499 U.S. 65, 70 n.2 (1991).

For the same reasons, the Court rejects Bowers' contention that the new guidelines, which circumscribe a member's ability to propose amendments to bylaws, run afoul of the LMRDA.  Nothing in the statute sets out any requirements with respect to the amendment of bylaws.  The UA Constitution is also silent on the issue.  Because no right of amendment is "expressly granted," *id.* at 1448, the Court finds no violation of Section 101(a)(1).

### B.  Title III Violations

Although Bowers appears to assert only Title I claims in his First Amended Petition (Doc. No. 26), he does object throughout to the extended duration of the trusteeship, and quotes relevant Title III LMRDA provisions.  The Court gives any asserted Title III claim brief treatment here.  Section 304(c) provides that a properly imposed trusteeship "shall be presumed valid for a period of eighteen months from the date of its establishment."  29 U.S.C. § 464(c).  Once that period has expired, "the trusteeship shall be presumed invalid [in a proceeding brought under this section,] and its continuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 302." *Id.*

The Court holds that the issue of whether the trusteeship was invalid under Title III has been rendered moot.  The local union held elections, officers were installed, and

the trusteeship dissolved.  No injunctive relief is appropriate at this stage.  Title III "questions regarding the validity of the purposes for which [the trusteeship] was imposed or maintained" are therefore moot.  *Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*, 2001 WL 1867701, at *4-7 (N.D. Ohio Oct. 18, 2001) (citations omitted).

To the extent Bowers seeks damages resulting from the actions of an invalidly maintained trusteeship, the Court agrees with the weight of precedent holding that a plaintiff may not maintain an action under Title III for "individual damages" flowing from his termination.  *See, e.g.*, *Ross v. Hotel Employees and Rest. Employees Int'l Union*, 266 F.3d 236, 250-57 (collecting cases).

The Court grants summary judgment to Defendants on any Title III claim asserted by Bowers.

### C.  Title IV Violations

In Bowers' motion for summary judgment, he concludes by asking this Court to nullify the new bylaws and order a new election under Local 211's bylaws.  The Court understands this requested relief to plead a Title IV claim.  Title IV "sets up a statutory scheme governing the election of union officers," *Calhoon*, 379 U.S. at 140, and is the exclusive means by which a court may invalidate an election.  Title IV mandates a procedure whereby an individual member may file a complaint with the DOL.  After an investigation, the Secretary of Labor may bring suit challenging the election.  "The exclusivity provision included in [Section 403] of Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers,*

*Warehousemen & Packers v. Crowley*, 467 U.S. 526, 541 (1984).  In other words, the Secretary of Labor is the only person who may seek relief regarding the Local 211 March 2009 election.  Accordingly, Bowers' claims under Title IV are denied.

### IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Bowers argues that he should be granted summary judgment with respect to his Title I claims.  For the reasons stated above, the Court denies Bowers' motion.  The Defendants have provided ample, unrebutted evidence that UA retains the authority to suspend local unions' autonomy and revise bylaws without a vote.  Furthermore, the Court finds that Bowers has not stated a claim under Section 101(a)(1) because he fails to allege discrimination with respect to the right to vote, nominate, or run for election.  Thus, he may not receive summary judgment on such a claim.

### V.    CONCLUSION

Defendants' Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.  Plaintiff Brent Bowers' Motion for Summary Judgment (Doc. No. 28) is **DENIED**.  The case is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

**SIGNED** at Houston, Texas, on this the 7th day of June, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.